IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO.: 06-Cr.-94 (RBW) |
| v. | : |
| CESAR FERNANDO JIMENEZ-SALGADO,<br>   aka Detective, | : |
| JUAN M. VASQUEZ,<br>   aka Felipe De La Rosa-Perez,<br>   aka Bofo, | : |
| EDUARDO OLMEDO-MARTINEZ,<br>   aka Abuelo, | |
|                        Defendants. | |

FILED

OCT 2 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## GOVERNMENT'S SUBMISSION TO THE COURT IN PREPARATION FOR THE UPCOMING PLEA HEARING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following in preparation for a plea hearing in the instant case.

I.    ELEMENTS OF THE OFFENSES:

    A.    The essential elements of the offense of Conspiracy to Commit an Offense Against the United States in violation of 18 U.S.C. § 371, are:

        1.    That an agreement existed between two or more people to commit an unlawful act;

        2.    That the defendant intentionally joined that agreement; and

        3.    That one of the co-conspirators did something for the purpose of carrying

out the conspiracy.

  B. The essential elements of the offense of Unlawful Reentry of a Removed Alien in violation of 8 U.S.C. § 1326(a), are:

    1. Defendant was an alien;

    2. The defendant was denied admission, excluded, deported, or removed from the United States; and

    3. Thereafter, he entered, attempted to enter or was found in the United States without permission and/or consent of the Attorney General of the United States.

II. COPY OF THE PLEA AGREEMENTS:

A copy of the plea agreements for each of the defendants in this matter are attached.

III. PENALTIES:

  A. Pursuant to 18 U.S.C. section 371, the charge carries a penalty of a term of imprisonment of not more than five years, a fine not to exceed $250,000, and a term of supervised release of not more than three years

  B. Pursuant to 8 U.S.C. § 1326(a) the charge of Unlawful Reentry of a Removed Alien carries a penalty of not more than two (2) years imprisonment, a maximum fine of $250,000 under 18 U.S.C. § 3571(b)(3), or both, and a maximum period of supervised release of not more than one year under 18 U.S.C. § 3583(b)(3). If the defendant's prior removal from the United States was subsequent to a conviction for commission of an aggravated felony, pursuant to 8 U.S.C. § 1326(a) and (b)(2), the charge of Unlawful Reentry of a Removed Alien carries a maximum

        penalty of twenty (20) years imprisonment, a maximum fine of $250,000 under 18

        U.S.C. § 3571(b)(3), or both, and a maximum period of supervised release of not

        more than three years under 18 U.S.C. § 3583(b)(2).

C.     In addition, a special assessment of $100 to the Clerk of the United States District

        Court should be assessed prior to the date of sentencing for each charge. See 18

        U.S.C. § 3013.

IV.    FACTUAL PROFFER IN SUPPORT OF GUILTY PLEAS:

If this case were to go to trial, the government's evidence would establish the following beyond a reasonable doubt:

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this statement of facts which the United States would have presented if this matter had gone to trial. The facts presented below show, beyond a reasonable doubt, that defendants Cesar Fernado Jimenez-Salgado, also known as "Detective;" Juan Vasquez, also know as "Felipe De La Rosa-Perez," also known as "Bofo;" and Eduardo Olmedo-Martinez, also known as "Abuelo" committed the offense of Conspiracy to Commit an Offense against the United States, in violation of 18 U.S.C. § 371, and the offense of Unlawful Re-entry of a Removed Alien in violation of 8 U.S.C. § 1326 (a).

### Conspiracy

The defendants are Mexican nationals who entered the United States illegally. Subsequently they came to Washington, D.C., when they joined an ongoing conspiracy the object of which was for the defendants, and other unindicted co-conspirators, to enrich themselves by producing and selling false identification documents, including fraudulent Resident Alien cards,

3

Employment Authorization cards and Social Security cards (collectively, "identity documents") in the 1600 through 1800 blocks of Columbia Road, N.W. ("Columbia Road"), Washington, D.C. These identity documents are required by statute or regulation for entry into or as evidence of authorized stay or employment in the United States. The members of this conspiracy to sell illegal identity documents included, among others not named here, the defendants, Ignacio Hernandez-Galicia, also known as "Veo;" Enrique Olmedo-Martinez, also known as "Parchis;" Ulises Escoto-Rodriguez, also known as "Piolin;" and Ricardo Romero-Martinez, also known as "King Kong."

Since at least July 1, 2005, Ignacio Hernandez-Galicia, also known as "Veo," Enrique Olmedo-Martinez, also known as "Parchis," and Ricardo Romero-Martinez, also known as "King Kong," as well as others not named here, were "vendors" in the organization. That is, they were responsible for selling the illegal identity documents to customers located on Columbia Road. They would offer the fraudulent documents to customers who would provide the vendors with the customer's name, date of birth and telephone number, as well as a number of passport-sized photographs. The vendors would then record the customer's identifying information on a small envelope as well as the kind of documents that the customer had ordered. They would then place the customer's passport-sized photographs inside the envelope and give the envelope to a "runner" in the organization. The "runner" would then take the envelope to the organization's office, or "mill," where the fraudulent documents were made by a "machinista," or document-maker. A few hours later, the runner would return the completed documents to the vendor who would then notify the customer that the documents were ready for pick-up. Upon receipt of the documents, the customer would pay the vendor anywhere from $10-$150 for the document or

4

groups of documents.

For example, on or about July 27, 2005, Ricardo Romero-Martinez, also known as "King Kong," while in the 1700 block of Columbia Road, NW, Washington, D.C., negotiated the sale of a fraudulent Resident Alien card and Social Security card with an undercover law enforcement officer. One day later, on or about July 28, 2005, Romero-Martinez distributed a fraudulent Resident Alien card and Social Security card in exchange for money to an undercover law enforcement officer in the 1700 block of Columbia Road, NW, Washington, D.C.

There were over 10 vendors who worked for the organization since July 1, 2005. Between July 1, 2005, and January 22, 2006, the organization sold over 50 fraudulent identity documents a week.

Since at least July 1, 2005, the defendant, Eduardo Olmedo-Martinez, also known as "Abuelo," along with another individual not named here, served as the organization's "machinista," or document-maker. The documents were created by Eduardo Olmedo-Martinez typing the customer's name and identifying information on pre-printed card stock made to appear like either a Resident Alien card, Employment Authorization card, or Social Security card. Eduardo Olmedo-Martinez would then affix the customer's passport photograph to the document, and, in the case of the fraudulent Resident Alien and Employment Authorization cards, sign the customer's name to the card. Alien Registration numbers and Social Security numbers were chosen at random and typed on the cards. Thereafter, the card would be laminated. It would also be the responsibility of the document maker to keep track, through a handwritten ledger, of the number of document sales generated by each vendor in the organization. These ledgers would then later be used to collect the organization's cut of the

money generated by the sale of the documents from each vendor. When he was not working as the document maker, Eduardo Olmedo-Martinez would also serve as runner for the organization, delivering the completed fraudulent documents back to the vendors on Columbia Road.

Since at least July 1, 2005, Cesar Jimenez-Salgado, also known as "Detective," was a local manager or supervisor of the criminal enterprise. Since that time he has shared these duties with at least one other individual. In the period immediately prior to his arrest on January 22, 2005, he shared duties as local manager or supervisor of the organization with Ulises Escoto-Rodriguez, also known as "Piolin." As local manager or supervisor, Cesar Jimenez-Salgado would be responsible for instructing new participants in techniques used by the organization, finding housing for new participants, supplying the organization's documents-makers with materials needed to make the fraudulent documents, and collected money from the vendors both for his own profit, and to be distributed to the bosses or leaders in the organization. The bosses or leaders of the organization are not located in the Washington, D.C., area. With regard to the latter, the local managers of the organization would collect from the vendors, on a weekly basis, the organization's cut of the money collected for sale of the false identity documents.

For example, on or around January 22, 2006, Cesar Jimenez-Salgado, and Ulises Escoto-Rodriguez, collected from the organization's vendors the organization's cut of the money the vendors had received selling fraudulent identity documents since the last collection day. Jimenez-Salgado and Escoto-Rodriguez were assisted in their collection efforts by hand-written ledgers that were created by the organization's document makers which listed the number of document sales the vendors in the organization made during the collection period. On January 22, 2006, Cesar Jimenez-Salgado and Ulises Escoto-Rodriguez where also assisted in their

collection efforts by Juan Vasquez, also know as "Felipe De La Rosa-Perez," also known as "Bofo." Juan Vasquez was being trained how to calculate the money due from each vendor, and how to collect it, by Ulises Escoto-Rodriguez .

On January 22, 2006, law enforcement officers watched a group of individuals, later identified as including Jimenez-Salgado, Escoto-Rodriguez, and Vasquez, leave 1707 North Capital Street, N.E., after having collected money from vendors for the organization who lived in the second floor apartment in the building. After Jimenez-Salgado, Escoto-Rodriguez, and Vasquez left 1707 North Capital Street, N.E., federal agents knocked on the door of the second floor apartment with the intent to execute an arrest warrant on Ricardo Romero-Martinez, also known as "King Kong," a vendor in the organization who they believed was inside the apartment. Thereafter, the occupants of the apartment, including Ignacio Hernandez-Galicia, also known as "Veo;" Enrique Olmedo-Martinez, also known as "Parchis; and the defendant, Eduardo Olmedo-Martinez, also known as "Abuelo," and consented to the agents searching the apartment. Inside of the apartment, the agents recovered various items associated with the manufacture and sale of illegal identity documents, including eight fraudulent Resident Alien Cards, twenty-eight fraudulent Social Security cards, as well as blank laminates, a razor, a cutting board and a hair dryer which were being used to make illegal identity documents.

Approximately an hour later on January 22, 2005, United States Immigration and Customs Enforcement (ICE) agents stopped Escoto-Rodrigucz, Jimenez-Salgado, and Vasquez at 3636 16th Street, N.W., Washington, D.C. Each were determined to be illegal aliens and taken into ICE custody. Found in Jimenez-Salgado's possession was over $1300 cash. Three handwritten ledgers listing fraudulent documents sales by the vendors in the organization were

found in Jimenez-Salgado's possession. Four such ledgers were found in Escoto-Rodriguez's possession. Found on the ground between Escoto-Rodriquez and Vasquez was $4500 in cash.

### Unlawful Re-entry of a Removed Alien – Cesar Jimenez-Salgado

The defendant, Cesar Jimenez-Salgado is a Mexican national who has previously been deported from the United States and who, thereafter, re-entered the United States illegally without applying for the express consent of the Attorney General of the United States or the Secretary of Homeland Security.

Specifically, on December 17, 1997, Jimenez-Salgado was deported to Mexico from Hidalgo, Texas, pursuant to an order of removal. At some date after his deportation, the defendant unlawfully returned to the United States. On or about January 22, 2006, Jimenez-Salgado was encountered by agents of U.S. Immigration and Customs Enforcement (ICE) at 3636 16th Street NW in Washington, D.C. It was determined that Jimenez-Salgado was an illegal alien from Mexico, and he was taken into ICE custody. The defendant did not obtain permission from the Attorney General or the Secretary of Homeland Security to re-enter the United States, where he was found on or about January 22, 2006.

### Unlawful Re-entry of a Removed Alien – Juan Vasquez, also known as "Felipe De La Rosa-Perez"

The defendant, Juan Vasquez, also known as "Felipe De La Rosa-Perez," is a Mexican national who has previously been deported from the United States and who, thereafter, re-entered the United States illegally without applying for the express consent of the Attorney General of the United States or the Secretary of Homeland Security.

Specifically, on November 10, 1997, Vasquez was deported to Mexico from Laredo,

Texas, pursuant to an order of deportation. At some date after his deportation, the defendant unlawfully returned to the United States. On or about January 22, 2006, Jimenez-Salgado was encountered by agents of U.S. Immigration and Customs Enforcement (ICE) at 3636 16th Street NW in Washington, D.C. It was determined that Jimenez-Salgado was an illegal alien from Mexico, and he was taken into ICE custody. The defendant did not obtain permission from the Attorney General or the Secretary of Homeland Security to re-enter the United States, where he was found on or about January 22, 2006.

### Unlawful Re-entry of a Removed Alien – Eduardo Olmedo-Martinez

The defendant, Eduardo Olmedo-Martinez is a Mexican national who has previously been deported from the United States subsequent to a conviction for an aggravated felony and who, following his deportation, re-entered the United States illegally without applying for the express consent of the Attorney General of the United States or the Secretary of Homeland Security.

Specifically, on or around December 12, 2002, in the United States District Court for the Eastern District of Michigan, Olmedo-Martinez pled guilty to Possession of a Firearm by an Illegal Alien in violation of 18 U.S.C. § 922(g)(5), an aggravated felony under 8 U.S.C. § 1101(a)(43).

Thereafter, on December 21, 2004, Olmedo-Martinez was deported from the United States to Mexico at El Paso, Texas, pursuant to an order of an Immigration Judge. At some date after his deportation, the defendant unlawfully returned to the United States. On or about January 22, 2006, Olmedo-Martinez was encountered by ICE Agents at 1707 North Capital Street, N.W., Apartment #2, in Washington, D.C. It was determined that Olmedo-Martinez was

9

an illegal alien from Mexico, and he was taken into ICE custody. The defendant did not obtain permission from the Attorney General or the Secretary of Homeland Security to re-enter the United States, where he was found on or about January 22, 2006.

                    Respectfully submitted,

                    KENNETH L. WAINSTEIN
                    United States Attorney
                    Bar No. #451058

By:    _____
                    G. MICHAEL HARVEY, AUSA, #447465
                    555 4th Street, N.W., 4th Floor
                    Washington, D.C. 20530
                    (202) 305-2195

## **Defendants' Acceptance of Factual Proffer**

**Cesar Jimenez-Salgado**

      I have read this Factual Proffer in Support of Guilty Plea and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Factual Proffer and all matters relating to it. I fully understand this Factual Proffer and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Factual Proffer fully. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

10/19/06
Date

_____
Cesar Jimenez-Salgado

**Cesar Jimenez-Salgado's Counsel's Acknowledgment**

I am Cesar Jimenez-Salgado's attorney. I have reviewed every part of this Factual Proffer in Support of Guilty Plea with him. It accurately and completely sets forth the Factual Proffer agreed to by the defendant and the Office of the United States Attorney for the District of Columbia.

_10.19.06_
Date

_J. V[signature]_
Joseph Virgilio, Esq.

**Juan Vasquez, aka Felipe De La Rosa-Perez**

I have read this Factual Proffer in Support of Guilty Plea and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Factual Proffer and all matters relating to it. I fully understand this Factual Proffer and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Factual Proffer fully. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

_10 19-06_
Date

_Juan Vazquez_
Juan Vasquez, aka Felipe De La Rosa-Perez

**Juan Vasquez's Counsel's Acknowledgment**

I am Juan Vasquez, aka Felipe De La Rosa-Perez's attorney. I have reviewed every part of this Factual Proffer in Support of Guilty Plea with him. It accurately and completely sets forth the Factual Proffer agreed to by the defendant and the Office of the United States Attorney for the District of Columbia.

_10/19/06_
Date

_[signature]_
Nathan Silver, Esq.

11

### Eduardo Olmedo-Martinez

I have read this Factual Proffer in Support of Guilty Plea and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Factual Proffer and all matters relating to it. I fully understand this Factual Proffer and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Factual Proffer fully. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

10-19-06
Date

Eduardo Olmedo-Martinez

### Eduardo Olmedo-Martinez's Counsel's Acknowledgment

I am Eduardo Olmedo-Martinez's attorney. I have reviewed every part of this Factual Proffer in Support of Guilty Plea with him. It accurately and completely sets forth the Factual Proffer agreed to by the defendant and the Office of the United States Attorney for the District of Columbia.

10/19/06
Date

William Garber, Esq.